IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DONALD KEITH SMITH #150025**                                                        **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:14cv294-HSO-RHW**

**RONALD WOODALL,** *et al.*                                                         **DEFENDANTS**

### REPORT AND RECOMMENDATION

Before the Court are two motions for summary judgment filed by Defendants in this *pro se* prisoner civil rights case: motion [63] filed June 10, 2015 by Michael Hatten, Health Service Administrator at South Mississippi Correctional Institution (SMCI), and motion [73] filed July 28, 2015 by Dr. Ronald Woodall, Nurse Practitioner Joseph Keyes[1] and their employer Wexford Health Sources, Inc. (Wexford). At the time of the incident of which Plaintiff complains, Wexford was the contract provider of medical services to SMCI inmates.

On June 19, 2015, Smith filed his response [67] and supporting memorandum [68] in opposition to Hatten's motion. On August 19, 2015, he filed [79] a motion requesting additional time to respond to the Woodall/Keyes/Wexford motion, which the Court granted by order [80] entered August 20, 2015. Smith filed his response [81] and memorandum [82] opposing the Woodall/Keyes/Wexford motion on September 11, 2015. Defendants filed no replies, and both motions are now ripe for ruling.

### Facts and Procedural History

Donald Keith Smith filed this *pro se* prisoner civil rights complaint dated July 16, 2014, alleging Defendants denied him constitutionally adequate medical care when he broke his arm. At that time, Smith was an inmate at SMCI where he was serving three sentences totaling 18

---

[1] Some pleadings in the case spell this surname "Keys." The Court uses the spelling on the docket.

years for convictions of kidnaping, fleeing law enforcement, and armed carjacking from Jackson County, Mississippi. The website for the Mississippi Department of Corrections (MDOC) then showed Smith entered MDOC July 14, 2009, and had a tentative release date of July 16, 2025. A change of address filed July 1, 2015, indicates Smith was out of prison by June 29, 2015. [69]

The Court conducted an omnibus/*Spears* hearing on December 11, 2014, at which Smith testified he broke his arm on February 26, 2015 when he was struck by another inmate and fell to the floor. [73-3, p. 7] He stated he filled out a sick call slip that night[2] and put it in the box, and a nurse saw him on March 4, 2014, gave him Ibuprofen and scheduled him to see the doctor.[3] Smith's medical appointments for March 5 and 6, 2014 were rescheduled due to institutional lockdown. [78, p. 210], [73-1] On March 9, 2014, Smith submitted a "written inmate request" (not a sick call request) complaining of pain and inability to sleep, and requesting an xray. The next day, the medical office told him he needed to fill out a sick call request. An appointment for March 11, 2014 was rescheduled due to institutional lockdown. [78, p. 211], [73-1]

Nurse Practitioner Joseph Keyes saw Smith on March 12, 2015. Keyes gave Smith Ibuprofen and a steroid shot, and told him he would have been seen earlier if his "brothers were not rioting" at the facility.[4] According to Smith, Keyes performed no physical examination, despite Smith's complaints that he could not raise his arm "because it's broken." [37, pp. 8-9] Keyes' affidavit and Smith's medical records show Keyes saw Smith on March 12 for complaints

---

[2]In document [16] Smith states he filled out the sick call slip on February 27, 2014 complaining "possible shoulder dislocation, severe pain, can't raise arm, please hurry." The request dated 2/27/2014) was received by medical on February 28, 2014and states Smith "fell off rack and possibly dislocated shoulder..." [78, p. 296] His complaint was triaged on March 1, 2015. [78, p. 209]

[3]The nurse who saw Smith on March 4, 2014 for complaint of shoulder pain noted no popping of the joint with movement, limited range of motion and that he grimaced when moving his shoulder. [78, pp. 209, 296]

[4]Smith contends this statement shows Keyes' reckless and callous indifference. [37, p. 19]

of left shoulder pain with adduction and flexion, Smith denied any numbness or tingling, and his color and motor strength in upper extremities were all normal and pulses were 2+. Keyes ordered an xray of the shoulder, an injection of Solumedrol, an anti-inflammatory steroid, and Ibuprofen. [73-1], [78, p. 214-15] A March 24, 2014 xray taken at the prison showed Smith's humerus was broken, for which Dr. McCleave requested an orthopedic consult, gave Smith two Vicodin pills for pain, a sling and Ibuprofen. [73-3, pp. 10-11], [78, p. 223] The xray report indicates Keyes ordered it, and the radiologist's impression is, "faint cortical step off and very faint linear lucency noted most consistent with non displaced fracture." [78, p. 291]

      On April 7, 2014, Smith submitted a request to see an orthopedist because he was still having pain. He was taken to Southern Bone & Joint Clinic in Hattiesburg on April 10, 2014, where he had additional xrays and saw a doctor who told him there was "really nothing he could do except he gave [Smith] some exercises to do..." as physical therapy. Smith's medical record for this visit indicates he told the orthopedist he "is increasingly getting to where he can use the arm more and more, but at first it was very uncomfortable." Examination revealed "no evidence of motor weakness or sensory deficit in the right upper extremity." An xray of the humerus showed a "nondisplaced greater tuberosity fracture," and the doctor told him he was fortunate that there was no displacement, and that "this will go on to heal fine without any surgical treatment." He gave Smith exercises to start increasing his range of motion and strengthening, and scheduled a follow-up in six weeks. [78, pp. 283-84] Smith did not trust the doctor's opinion, and refused to return for the scheduled April 17, 2014 follow-up. [73-3, pp. 12-13], [78, p. 282] Smith testified he has recovered good range of motion in his arm. [73-3, pp. 13-14]

      At the hearing, Smith clarified his claims against the individual defendants. He complains that Dr. Woodall "authorized the removal of $6.00 out of [his] account for the sick

call slip, and on the face of the sick call slip, it clearly says emergency visits are not charged." Smith wants the $6.00 refunded to his inmate account. [37, pp. 14-15] Smith stated he sued Hatten, the Health Services Administrator at SMCI, because he believes Hatten monitors Wexford's contract to provide health care, and knows Wexford does not provide adequate medical care. [37, pp. 14-15] Smith admitted he has never spoken to nor had any contact with Hatten about his injury. Smith contends Wexford has a policy of delaying seeing inmates for emergency situations, that it takes four or five days to be seen after turning in a sick call request. Smith believes earlier treatment would have made a difference in his healing process and that his arm has healed improperly because prison medical personnel did not immediately immobilize it.

## Summary Judgment Standard

Under Rule 56, FED.R.CIV.P., a motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." A material fact is one that might affect the outcome of the suit under the governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005).

The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). One seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, and any affidavits, which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325. If the movant fails to show the absence of a genuine issue

concerning any material fact, summary judgment must be denied, even if the non-movant has not responded to the motion. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant carries his burden, the burden shifts to the non-movant to show that summary judgment should not be granted. The non-movant may not rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324-325.

## **Deliberate indifference to serious medical needs**

While a prisoner is entitled to medical care during his incarceration, he has no constitutional right to the "best" medical treatment available. *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006) (citing *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978)). To state a cognizable Eighth Amendment claim for denial of medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). To establish a constitutional violation for inadequate medical care, Smith bore the burden of proving: (1) the Defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the Defendants actually drew that inference; and (3) the Defendants' response indicated that they subjectively intended that the harm occur. *Thompson v. Upshur County, TX*, 245 F.3d 447, 458-59 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (plaintiff must show officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs"). In other words, Smith had to show Defendants knew of and disregarded an excessive risk to his health or safety, and that their deliberate indifference to his serious medical needs unnecessarily and wantonly inflicted harm on

him.  Mere negligence or neglect do not constitute a valid § 1983 claim.  *See*, *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).  Smith's disagreement with the medical treatment he received does not state a constitutional claim for deliberate indifference to medical needs.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Unsuccessful medical treatment, negligence, neglect or even medical malpractice do not give rise to a § 1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)(citing *Johnson v. Treen*, 759 F.2d at 1238).  Even inadequate medical care does not automatically establish a constitutional violation:

> Not all inadequate medical care rises to the level of an Eighth Amendment violation; "[it] is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  A plaintiff must prove "objectively that he was exposed to a substantial risk of serious harm," and that "jail officials acted or failed to act with  indifference to that risk," which requires actual knowledge and  disregard.

(Footnotes omitted).  *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).  Prison officials are not liable for denial of medical treatment unless they know of and disregard an excessive risk to an inmate's health or safety.  *Gobert v. Caldwell*, 463 F.3d at 346; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

**The Hatten Motion**:

Michael Hatten urges he should be granted summary judgment on grounds of sovereign immunity for any official capacity claims Smith makes against him, and on grounds of qualified immunity to the extent that he is sued in his individual capacity.  The Eleventh Amendment precludes private individuals from suing the State in federal court unless Congress has abrogated, or the State has waived its sovereign immunity.  *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  Mississippi has not waived its right to sovereign

immunity. *See* MISS. CODE ANN. § 11-46-5(4). Sovereign immunity extends to any state agency deemed to be "an arm" of the state. *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). A lawsuit against a state employee in his official capacity is, in fact, a suit against the State. *See American Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). By affidavit [63-1], Hatten establishes that he is an employee of the Mississippi Department of Corrections (MDOC), which is an arm of the State of Mississippi. *See Williams v. Mississippi Dept. of Corrections*, 2012 WL 2052101, at *1-2 (S.D. Miss. June 6, 2012); *Dandridge v. Mississippi*, 2009 WL 4940105, at *6-7 (S.D. Miss. December 14, 2009). In addition, Smith unequivocally states in his response to Hatten's motion that "he has not sued Hatten in his official capacity..." and he concedes in his memorandum that an official capacity claim against Hatten would be barred by the Eleventh Amendment. [67, ¶ 6], [68, p. 4] The undersigned will therefore recommend dismissal of any official capacity claim against Hatten for monetary damages in this action.

Hatten next asserts he is entitled to qualified immunity from Smith's claims against him in his individual capacity.

> The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As an MDOC employee, Hatten is entitled to assert the defense of qualified immunity for acts and omissions which occur in the course of his official duties. *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341

(1986).  If a reasonable competent officer would not have known that his actions violated clearly established law, he is protected by qualified immunity.  *Harper v. Harris County, Texas*, 21 F.3d 597, 600 (5th Cir. 1994) (citing *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)).

     Evaluation of a claim of qualified immunity is a two-step process which requires the Court to determine (1) whether the facts plaintiff has alleged show violation of a constitutional right by the official, and (2) whether the right was clearly established.  *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)); *Siegert v. Gilley,* 500 U.S. 226, 232-34 (1991).  The contours of the right must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right.  *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1059 (5th Cir.1994).  Viewing the evidence in the light most favorable to Smith, if reasonable public officials could differ on the lawfulness of Hatten's actions, then Hatten is entitled to qualified immunity.  *McClendon*, 305 F.3d at 323 (holding a state actor is entitled to qualified immunity if his conduct was objectively reasonable in light of legal rules clearly established at the time).

     Smith's complaint alleges only that "Hatten is responsible for inmates medical care at S.M.C.I. in which he failed miserably."  [1, p. 4]  In document [15], Smith's response to an order [12] requiring him to specifically state how Hatten violated his constitutional rights, Smith alleges Hatten is the hospital administrator at SMCI, whose duties include "scheduling appointments and ensuring that inmates are provided adequate medical care."  [15, p. 2]  At the December 11, 2014 hearing, Smith testified he believes Hatten "is kind of like a monitor of the Wexford Health's contract...;" it is Smith's understanding that Hatten's job is to monitor the care at the facility, and that Hatten is aware that Wexford delays seeing inmates after they submit sick call requests.  [73-3, pp. 15-16]  Smith has stated that, "Through discovery, Smith will be able to

better determine [Hatten's] personal involvement with more specific allegations of his knowledge and responsibility." [15, p. 2]

At the hearing, Hatten's attorney provided Smith a copy of his institutional file and medical records, and counsel for the Wexford Defendants (Woodall, Keyes and Wexford) provided him the 527 pages of medical records in their possession.  The Court advised Smith he could propound discovery to Defendants [73-3, p. 21], and during the course of this case the Court has twice extended the discovery and motions deadlines.  *See* Text Order of  March 20, 2015 and order [66] entered June 15, 2015.  The docket reflects that on March 5, 2015, Smith served interrogatories, requests for production and requests for admissions on all Defendants [43, 44 and 45], that he again served discovery requests on Hatten's counsel on April 9, 2015 [49, 50 and 51], and that Hatten served responses to Smith's requests for production, interrogatories, and requests for admissions on May 11, 2015.  [55, 56 and 57]  Despite this significant discovery, in response to Hatten's motion, Smith provides no further *facts* about Hatten, choosing instead to repeat his conclusory allegations and beliefs that Hatten knew Wexford did not timely see inmates or provided deficient medical treatment, and to quote case law.

The Court has been presented no factual evidence that Hatten had anything to do with handling Smith's sick call requests or medical treatment for his arm injury.  Smith admits he never made Hatten aware of the problem.  [73-3, p. 20]  Hatten's affidavit confirms that fact and further establishes that Hatten had no authority to order or deny any specific health treatment for inmates, and made no decisions regarding the scope or timing of care afforded Smith for his injury. [63-1]  The undersigned is of the opinion that the facts Smith has alleged do not show violation of a constitutional right by Hatten, and the undersigned will recommend that Hatten's summary judgment motion be granted as to Smith's individual capacity claims against him.

**The Woodall, Keyes, Wexford Motion**:

There is neither any allegation nor evidence that Dr. Woodall was involved in Smith's treatment.  Instead, Smith alleges Wexford, "by and through Ronald Woodall took $6.00 from [his] account for an emergency [sick call] visit ..." in violation of the Constitution.  [1]  This allegation fails to state a claim upon which relief can be granted, as prisoners have no constitutional right to free medical care.  *See*, *Ward v. Fisher*, 2015 WL 3609507, at *3 (5th Cir. June 10, 2015); *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir.), *cert. denied*, 134 S.Ct. 2743 (2014); *Drake v. Jones*, 2008 WL 2051744, at *2, n.2 (W.D. La. 2008); *Hutchinson v. Belt*, 957 F.Supp. 97, 100 (W.D. La. 1996) (citing *Shapley v. Nevada Board of State Prison Com'rs,* 766 F.2d 404, 408 (9th Cir.1985); *Boblett v. Angelone,* 942 F.Supp. 251, 254 (W.D. Va. 1996); *Martin v. DeBruyn,* 880 F.Supp. 610, 615 (N.D. Ind. 1995); *Johnson v. Dept. of Public Safety & Correctional Services,* 885 F.Supp. 817, 820 (D. Md. 1995)).  Furthermore, an intentional deprivation of property by state officials does not violate the due process clause of the Fourteenth Amendment if adequate post deprivation remedies exist.  *Hudson v. Palmer,* 468 U.S. 517 (1984).  This holds equally true for claims of negligent deprivation.  *See Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344 (1986).  Under the *Parratt/Hudson* doctrine[5], a state actor's unauthorized deprivation of a plaintiff's property does not violate due process if the state provides an adequate post-deprivation remedy.  *Myers v. Klevenhagen,* 97 F.3d 91 (5th Cir. 1996); *see also Marshall v. Norwood*, 741 F.2d 761, 763 (5th Cir. 1984).  The State of Mississippi provides at least three post-seizure remedies, including actions for conversion, claim and delivery, and replevin, any of which plaintiff can use to recover property he claims was wrongfully taken from him.  The Fifth Circuit has held that "Mississippi's post-

---

[5]*Parratt v. Taylor,* 451 U.S. 527 (1981) and *Hudson v. Palmer,* 468 U.S. 517 (1984).

deprivation remedies for civil IFP litigants satisfy due process." *Nickens v. Melton,* 38 F.3d 183, 185 (5th Cir. 1994).  Since the state affords plaintiff an adequate remedy for the alleged deprivation of his $6.00, no due process violation exists.  The undersigned will recommend that Smith's claim against claims against Wexford and Dr. Woodall for the $6.00 charge be dismissed for failure to state a claim upon which relief can be granted.

      Smith's allegation that Keyes failed to examine him on March 12, 2014 is both belied by his medical records and refuted by Keyes' sworn affidavit, which show Keyes examined Smith, documented his findings, gave him a steroid injection and Ibuprofen, and ordered an xray.  The fact that Keyes did not diagnose the broken arm on that single occasion does not equate to deliberate indifference, particularly since Keyes is the one who ordered the xray which led to the diagnosis.  With respect to the medical care Smith received, his records show his first sick call request regarding his shoulder was dated February 27, 2014, received in the medical department on February 28, 2014, triaged on March 1, 2014, and he was seen by a nurse on March 4, 2014 who provided him Ibuprofen and scheduled him to see the doctor.  Appointments for March 5, 6 and 11 were rescheduled because the prison was on lockdown, a situation neither created nor controlled by the medical care providers.  While the March 24, 2014 xray showed a non displaced fracture of the humerus, the orthopedist found no evidence of motor weakness or sensory deficit in the arm, Smith told him the arm was improving and the orthopedist advised that it would heal fine without any surgery.  Smith refused to return to the orthopedist for further treatment or evaluation.  A finding of deliberate indifference "must rest on the facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen,* 759 F.2d at 1238; *Gobert v. Caldwell*, 463 F.3d at 346.  The facts of this case do not demonstrate such wanton actions, and fail to show deliberate indifference by Keyes, Wexford or any medical care

providers to Smith's serious medical needs with respect to his arm injury.  The evidence before the Court shows Smith received medical care on numerous occasions and his complaints were addressed.  Because Smith has failed to present "significant probative evidence," that there exists a genuine issue of material fact, the undersigned finds Smith has failed to meet his burden to show a constitutional violation by Keyes or Woodall.  *See*, *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  That, along with the fact that § 1983 does not create supervisory or *respondeat superior* liability, leaves no basis for liability against Wexford.  *Oliver v. Scott*, 276 F.3d 736, 742, n.6 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987).  Pursuant to applicable law, and from the evidence of record, the undersigned finds summary judgment appropriate as to all Defendants.

## RECOMMENDATION

In accordance with the foregoing, the undersigned United States Magistrate Judge recommends that Defendants' motions for summary judgment be granted, and this case, dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *L.U.Civ.R.,* a party has 14 days after being served a copy of this Report and Recommendation to serve and file written objections to it.  Objections must be filed with the clerk of court, served upon the other parties and submitted to the assigned District Judge.  Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to timely file written objections shall be barred, except upon

grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he/she did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 28th day of October, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE